

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TILKIN & CAGEN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08 C 6095 |
| | ) | |
| UNITED METAL RECEPTACLE CORP., | ) | |
| RUBBERMAID COMMERCIAL PRODUCTS, | ) | |
| LLC, and RICHARD WEISS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Sales representative Tilkin & Cagen, Inc. ("Tilkin"), terminated by United Metal Receptacle Corporation ("United") after nearly 28 years of an informal relationship that Tilkin's lawyer characterizes as "a handshake deal," has sued both United and Rubbermaid Commercial Products, LLC ("Rubbermaid"), which purchased all of United's assets for some $40.5 million during the same month as United's notice of termination to Tilkin. Tilkin's second lawsuit targeting both those defendants and Richard Weiss ("Weiss") was filed in the Circuit Court of Lake County and then was promptly removed to this District Court.[1] Defendants have moved to dismiss the multi count Complaint and, after the December 8, 2008 court session during which this Court orally indicated its threshold views on issues posed by Tilkin's claims, both sides have expanded on their respective positions with further written submissions.

---

[1] Tilkin had originally sued here and was met with a swift sua sponte dismissal by this Court because it had ignored solidly established and repeated Seventh Circuit case law in failing to identify Rubbermaid's states of citizenship for purposes of a diversity action. This Court has earlier warned Tilkin's counsel that it is considering the possible imposition of 28 U.S.C. §1927 liability on them for having taken the path that they did, rather than the one invited by this Court in the dismissal order, thus saddling defendants with the needless (1) payment of a $350 filing fee and (2) expense of legal services in the removal to this District Court. That consideration, which remains on the table for future disposition, will not be addressed here.

As always when a Fed. R. Civ. P. ("Rule") 12(b)(6) motion is under consideration, this Court will credit the Complaint's factual allegations. That does not of course extend to Tilkin's characterization of the legal consequences of those alleged facts, to which this opinion turns its attention.

First off, before the issue of what Tilkin <u>may</u> be entitled to claim is addressed, it is useful to cabin the dispute by identifying what Tilkin <u>may not</u> pursue. That identification calls for a look at the situation vis-a-vis each of the three defendants. What cuts across the board, however, is Tilkin's view that its invocation of the "procuring clause" doctrine assures it of compensation in perpetuity on the premise that once its efforts resulted in the placement of United's products in a distributor's catalog (now enlarged in Tilkin's December 22 Supplemental Response to extend to distributors' websites), the benefit from those efforts goes on forever.

Ironically the same Supplemental Response seeks to call to Tilkin's aid the serendipitous decision of our Court of Appeals earlier this month in <u>AA Sales & Assocs., Inc., v. Coni-Seal, Inc.</u>, No. 07-2694, 2008 WL 5134643 (7th Cir. Dec. 9). <u>AA Sales</u> does shed light on another aspect of this case (dealt with later), but for the present it suffices to quote that opinion's brief identification of a like claim made by the terminated sales representative there (<u>id.</u> at *6):

> AA Sales points to no evidence that Coni-Seal agreed to continue post-termination commissions in perpetuity.

True enough, this case is at the pleading rather than the evidence stage -- but nothing in Tilkin's Complaint either states or creates a reasonable inference of such a perpetual entitlement. Greed is not an acceptable substitute for either evidence or the allegations in a complaint.

In that respect Supplement Response 1-2 criticizes our Court of Appeals'

characterization of the procuring clause doctrine in <u>Harold Wright Co. v. E.I. duPont de Nemours & Co.</u>, 49 F.3d 308, 310 (7th Cir. 1995) (and thus it presumably criticizes this Court's reliance on that characterization):

> The doctrine of procuring cause creates a default term, which is to say a term that a court plugs into a contract to fill a gap in a way the court thinks the parties would have done had they thought about it.

Although Tilkin seeks to denigrate <u>Harold Wright</u> by stating "this particular 'default' was apparently created in <u>Harold Wright</u> which cited to no prior authority in introducing this view," its Supplemental Response fails to include among its references to <u>AA Sales</u> that case's own identical description of the procuring cause doctrine as a "default rule" (2008 WL 5134643, at *4):

> However, the procuring cause rule is merely a default rule and is inapplicable when a contract specifies other bases of fee recovery.

It is worth observing that, although the following statement admittedly goes beyond the Complaint, page 2 of defendants' recently filed Reply says this about the well-known Rubbermaid Company, a major player in its market (and United's former mzrket):

> United and Rubbermaid products typically appeared in the same catalogs, and Tilkin's efforts were directed to procuring space in the catalogs (typically a number of pages) in which United products would appear in competition with Rubbermaid products.
> 
> * * *
> 
> However, after Tilkin was terminated, its previous efforts to get United products into catalogs were of no utility to Rubbermaid, which has its own sales force and, unlike United, has little difficulty acquiring catalog space when necessary.

That representation is hardly surprising, and if the facts bear out what Rubbermaid has said, that would further buttress what this Court had said about the <u>Harold Wright</u> statement during the December 8 status hearing that ended up calling for the parties' most recent submissions (Tr. 16-17):

> You provide me some authority, I'll look at it. But you've got to do that, because otherwise you know the point that I made about our Seventh Circuit law that's that Gadsby case and the Harold Wright case that it repeats, says essentially that it has

to be a term that the court puts into a contract, because it's not an express one certainly, to fill a gap that it would believe that the parties would have filled if they had thought about it. And unless you get me something that says, "Well, they should have known because here is the case law that said that," I can tell you right now I am not prepared to find that the parties would have included such a provision if they had thought about it. Your client might have wanted that, but as in all such relationships it takes two to tango, you know. And so unitary desire doesn't do the job.

As for Weiss, identified in Complaint ¶5 as United's "President, Chairman, CEO and Majority Shareholder," Tilkin targets him in Count III (together with Rubbermaid) under the rubric "Tortious Interference with Economic Advantage." That simply won't do under principles established a quarter century ago in <u>George S. Fuller Co. v. Chicago Coll. of Osteopathic Medicine</u>, 719 F.2d 1326, 1333, 7th Cir. (1983). Tilkin also adds Count V, labeled "Unjust Enrichment," against Weiss alone. That heavy-handed effort to recharacterize United's corporate sale of assets, even if followed by a distribution to Weiss in liquidation, won't do either. In sum, no basis appears to exist for Weiss' retention as a defendant.

As for United, the present Complaint differs from Tilkin's original effort by its dropping of a breach of contract claim, leaving only Count IV labeled "Unjust Enrichment." That count proceeds on the theory, set out in Complaint ¶51, that some undefined "portion of the price paid by Rubbermaid for United Receptacle's assets reflected the value of such catalog and website space and the revenue stream projected to continue flowing from the sale of products to the industrial distributors serviced by Tilkin, including sales through such catalogs and websites." But the "handshake" relationship between Tilkin and United was admittedly contractual in nature, albeit oral and terminable at will (as is also admitted by Tilkin). Any such claim is torpedoed by the principle of Illinois law succinctly reconfirmed in <u>Ramirez v. Smart Corp.</u>, 371 Ill. App. 3d 797, 809, 863 N.E.2d 800, 814 (3d Dist. 2007):

> Because unjust enrichment is based on an implied contract, "where there is a specific contract which governs the relationship of the parties, the doctrine of

> unjust enrichment has no application." *La Throp v. Bell Federal Savings & Loan Association*, 68 Ill.2d 375, 391, 12 Ill.Dec. 565, 370 N.E.2d 188 (1977).

That proposition has unsurprisingly been stated just as succinctly by our Court of Appeals in diversity cases applying Illinois law, such as <u>Utility Audit, Inc. v. Horace Mann Serv. Corp.</u>, 383 F.3d 683 (7th Cir. 2004).

Thus United as well as Weiss is entitled to dismissal from the Complaint, leaving only the three counts that target Rubbermaid: Count I captioned "Procuring Clause Doctrine," the Count II alternative captioned "Unjust Enrichment/Quantum Meruit" and Count III, captioned "Tortious Interference with Economic Advantage." Although this Court rejects Rubbermaid's effort to extricate itself from this litigation entirely, it is useful to avoid surrendering to the tyranny of labels. However Tilkin's claim may be packaged, what cannot be gainsaid is that Tilkin did render a service with the justifiable expectation that it would be paid for the fruits of its labor (in this instance, by commissions on sales attributable to those efforts).

As this Court has previously indicated orally, the measure of Tilkin's entitlement must be limited to the catalogs either in place or firmly committed as of the date of Tilkin's termination. Although Tilkin's action is also framed to encompass distributors' websites as well as catalogs, neither side's submissions provide enough information to permit an informed decision at this point as to the applicability (or as to the application, if indeed applicable) of the procuring cause concept in that context.

Two other allegations against Rubbermaid in Count I must be rejected as unwarranted extensions of the "procuring cause" concept. Hence even though Rubbermaid's motion to dismiss tht count in its entirety is denied, Tilkin's potential recovery on that count is further limited in those two respects.

First, Complaint ¶11 alleges in part:

> Tilkin earned and was paid commissions on such sales of United Receptacle's products through its industrial distributor accounts, whether or not such products appeared in the catalog.

Any effort to extend that entitlement beyond the date Tilkin was terminated from its at-will relationship with United would stretch the "procuring cause" default rule beyond the breaking point. No case cited by Tilkin or located by this Court supports such a notion, as contrasted with the potential for recovery of a commission for sales through catalogs that were current (or perhaps committed for) as of the termination date and as to which Tilkin is able to establish causation on its part.

Second, in Complaint ¶14 (an allegation later repeated in Complaint ¶49) Tilkin also seeks to sweep up, as a predicate for recovery, sales of United products as to which it had only "made proposals for the inclusion of United Receptacle products, in these catalogs, among others, for 2008 and beyond." That notion, like Tilkin's effort to become a perpetual burr under Rubbermaid's saddle, constitutes overreaching that this Court rejects as going well beyond the "procuring cause" principle.

In sum, Tilkin's Rule 12(b)(6) motion is granted as to United and Weiss but denied as to Rubbermaid (except for the limitations stated in this opinion). Accordingly Rubbermaid is ordered to file its answer to the Complaint on or before January 19, 2009.[2]

                                               */s/ Milton I. Shadur*
                                               MILTON I. SHADUR
                                               Senior Judge, U.S. District Court

December 30, 2008.

---

[2] When the Complaint was filed in the state court, Tilkin's prayer for relief sought commissions "due and owing ... in an amount to be established at trial but in excess of $50,000"(Count I), as well as punitive damages under Count III. There is no principled basis for a punitive damage award against Rubbermaid, and Weiss (the other target of Count III) is out of the case entirely. With Tilkin's compensatory damage claim cabined in accordance with this opinion, the parties should be prepared to address the sufficiency of the real amount in controversy for purposes of subject matter jurisdiction (see, e.g., Smith v. Am. Gen. Life & Accident Ins. Co., 337 F.3d 888, 892-94 (7th Cir. 2003)).